UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

XINIA MANOUKIAN,

    Plaintiff,

v.                                        Case No: 6:13-cv-1422-Orl-31TBS

SECRETARY U.S. DEPARTMENT OF
HOMELAND SECURITY, FIELD OFFICE
DIRECTOR U.S. CITIZEN AND
IMMIGRATION SERVICES, DISTRICT
DIRECTOR U.S. CITIZEN AND
IMMIGRATION SERVICES and U.S.
ATTORNEY GENERAL,

    Defendants.

## REPORT AND RECOMMENDATION[1]

This matter was referred to me by the district judge to prepare a report and recommendation on the disposition of Plaintiff Xinia Manoukian's Petition to Amend/Correct Certificate of Naturalization.  (Doc. 1).  My review of the petition, the exhibits attached to it, and the applicable statutes and case law leads me to conclude that this Court lacks authority to consider the merit of the petition.  Petitioner's request to amend her naturalization certificate is properly presented not to this court, but to the court that issued the certificate–the United States District Court for the Southern District of Florida.  Therefore, I **RESPECTFULLY RECOMMEND** that, in the interest of justice pursuant to 28 U.S.C. §§ 1406(a) and 1631, this case be transferred to the Miami Division of that court.

---

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

## I.  Background

Petitioner Xinia Manoukian is a naturalized United States citizen who resides in Volusia County, Florida.  (Doc. 1, p. 3).  She gained her citizenship on November 1, 1983, when the United States District Court for the Southern District of Florida granted her petition for naturalization in an open session in Miami.  (Id.; Doc. 1-3).

Petitioner was born Xinia Rimola Hidalgo in San Juan, Costa Rica in November or December 1953, but the exact date is unclear.  In her petition, she identifies November 24 as her birthday, and presents her recently-issued Costa Rican passport as well as a copy of a Costa Rican vital record as evidence of this.  (Doc. 1, p. 3; Docs. 1-6, 1-7, 1-8).  Her naturalization certificate states that she was born on December 12, 1953.  (Doc. 1, p. 3; Doc. 1-3).  Further complicating matters, before she was naturalized, her father incorrectly recorded her birth certificate to reflect a birth date of December 24, which is the date reflected on her United States passport.  (Doc. 1, p. 3).

On February 12, 2013, Petitioner filed a request with the United States Citizenship and Immigration Service (USCIS) to issue her a replacement birth certificate with a corrected date of birth.  (Doc. 1, p. 3; Doc. 1-4).  The USCIS denied her application on June 12 on the grounds that it did not have authority to issue a replacement certificate reflecting a different date of birth than the one stated on her citizenship application materials.  (Doc. 1, p. 3; Doc. 1-6).  Three months later, Petitioner filed the pending petition in this Court. On October 29, 2013, the Court entered an order requesting additional briefing on the following two questions: "Under FED.R.CIV.P. 60(b), should not this petition be filed in the court that entered the order naturalizing Petitioner? If the petition is properly heard outside the Southern District of Florida, why should it be heard by this Court?"  (Doc. 7).  Petitioner's response to the order argues that the Court can and

- 2 -

should hear the petition. (Doc. 8). Alternatively, if the Court refuses to hear the petition, Petitioner requests that the Court transfer the case to the Southern District of Florida. (Doc. 8).

## II. Discussion

For most of the Country's history, the authority to naturalize aliens belonged to the state and federal courts. Holmgren v. United States, 217 U.S. 509, 516-17 (1910); Immigration and Nationality Act of 1952 ("1952 Act"), Pub. L. 82-414, § 334, 66 Stat. 163, 254, codified at 8 U.S.C. § 1421 (1990). Under this regime, an immigrant who wished to become a United States citizen had to file a petition in federal district court or a state court of general jurisdiction. If the court decided to grant the petition, the petitioner would appear before an open session of the court and take the oath of renunciation and allegiance. 1952 Act, § 337, codified at 8 U.S.C § 1448 (1990).[2] The court would then find that the petitioner resided within its territorial jurisdiction and met the requirements to be naturalized, and order that the petitioner be admitted as a citizen. Following the proceeding, the clerk of the court would issue the newly-admitted citizen a certificate of naturalization. Id. § 338, codified at 8 U.S.C. § 1449 (1990).

In 1990, Congress enacted the Immigration Act of 1990 ("1990 Act"). Pub. L. 101-649, 104 Stat. 4978, which transferred naturalization authority from the courts to the Attorney General effective October 1, 1991. Id. § 401(a), amending 8 U.S.C. § 1421. Pre-1991 naturalization orders, however, were unquestionably court orders. See Tutun v. United States, 270 U.S. 568, 577 (1926) (a naturalization petition is a "case" within the meaning of Article III of the Constitution). And, generally speaking, a court has the

---

[2] This aspect of the naturalization process was preserved by the 1990 amendments to the federal immigration laws. See 8 U.S.C. § 1448. The role of the courts under the current scheme, however, is more ceremonial than functional.

- 3 -

authority to reconsider, amend, modify, or vacate its own orders. The pre-1990 naturalization statute expressly recognized "the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person," as permitted by the court's procedural rules. 8 U.S.C. § 1451(i) (1990). In the federal system, Rule 60(b) provides the mechanism for exercising the power to modify judgments.[3]

Rule 60(b) and the prior immigration statute unquestionably afforded courts that naturalized citizens the power to correct, reopen, alter, modify, or vacate the naturalization orders they entered. While there is some authority supporting the proposition that the 1990 Act revoked federal jurisdiction to revisit pre-1991 naturalization orders under Rule 60, see Malieni v. USCIS, Detroit Dist., 2013 WL 466204 (E.D. Mich. Feb. 7, 2013) (stating—in dictum, as the petitioner was admitted in 1998—that the 1990 Act eliminated jurisdiction to revisit pre-1991 naturalization orders), the 1990 Act did not expressly revoke jurisdiction. Instead, it simply replaced a provision stating that the section "shall not be regarded as limiting, denying, or restricting" a naturalization court's power to reconsider a naturalization order with one stating that the section "shall not be

---

[3] Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

regarded as limiting, denying, or restricting" the Attorney General's power to "correct, reopen, alter, modify, or vacate" a naturalization order. 8 U.S.C. § 1451(h).[4] Indeed, for some 20 years, USCIS regulations recognized courts' continuing jurisdiction over naturalization orders they issued under the prior statute. See 8 C.F.R. § 334.16(b) (requiring service of a copy of any post-final-judgment amendment of a naturalization petition on the USCIS district director, who may not object to the amendment if it is to "correct a clerical error arising from oversight or omission"). See also Yeshiwas v. USCIS, 2013 WL 5289061, at *2 (N.D. Cal. Sept. 19, 2013) (quoting USCIS denial letter to applicant that stated, "[o]nly a U.S. Federal Court with jurisdiction over your naturalization proceedings has the authority to order that an amendment be made to your Certificate of Naturalization"). In November 2011 the USCIS changed its position, repealing § 334.16 as "obsolete" because "[pre-1991] petitions were under the jurisdiction of the naturalization court until that date," 76 Fed. Reg. 53764-01, 53769 (Aug. 29, 2011), and begin raising jurisdictional challenges to such petitions in federal court. See, e.g., Ampadu v. USCIS, Dist. Director, __ F. Supp. 2d __, 2013 WL 1892713 (C.D. Ill. May 3, 2013). Most courts that have considered such challenges have rejected them, finding a basis for jurisdiction in either the pre-1990 statute or Rule 60.[5]  I agree and conclude that

---

[4] No court appears to have considered whether Congress may actually grant the executive branch Rule 60-like authority to review final judgments of federal courts, which pre-1991 orders naturalizing aliens are. Cf. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218 (1995) ("Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch."). So the "power" referred to in the amended § 1451(h) may not be much of a power as applied to judicially-entered, pre-1991 naturalization orders.

[5] Matter of Shrewsbury, 1996 WL 64988, at *1 (9th Cir. 1996) ("Because the order naturalizing this petitioner was a court order, the court had jurisdiction under the prior statute to amend it."); Ampadu v. USCIS, Dist. Director, __ F. Supp. 2d __, 2013 WL 1892713 (C.D. Ill. May 3, 2013) (jurisdiction pursuant to rule 60 and former § 1451(i)); Kennedy v. USCIS, 871 F. Supp. 2d 996, 1007 (N.D. Cal. 2012) (jurisdiction based on former § 1451(i)); Yeshiwas v. USCIS, 2013 WL 5289061 (N.D. Cal. Sept. 19, 2013) (jurisdiction based on former § 1451(i)); Jung Ai Shin v. USCIS, (C.D. Cal. Feb. 13, 2013) (jurisdiction based on former § 1451(i) and Rule 60); Boiko v. Holder, 2013 WL 709047 (D. Colo. Feb. 26, 2013). See also McKenzie v. USCIS, Dist. Director, 2012 WL 5954193 (W.D. Okla. Nov. 28, 2012) ("[A] court would have jurisdiction to

the United States District Court for the Southern District of Florida may properly entertain the petition.

Whether this Court may do the same is an entirely different question. The statute in effect before 1991 affirmed the power of the "**naturalization court**, by or in which a person has been naturalized" to revisit "**its** judgment or decree naturalizing such person." 8 U.S.C. § 1451(i) (1990) (emphasis added). Nor does Rule 60(b) ordinarily permit one federal district court to revisit another district court's orders. A proceeding in one court attacking the judgment or decree of another is in the nature of a collateral attack, not a Rule 60 motion. See FED.R.CIV.P. 60(d)(1) (recognizing the power to "entertain an independent action to relieve a party from a judgment, order, or proceeding" as distinct from the Rule 60(b) power to revisit a court's own judgment).

Federal courts have considered Rule 60(b) motions addressing judgments of other courts only in two limited classes of cases. Indian Head Nat'l Bank of Nashua v. Brunelle, 689 F.2d 245, 250 (1st Cir. 1982). First, "courts other than the rendering court have in some instances considered the requests of parties who proceeded by Rule 60(b) motions by treating the motions as independent equitable actions." Id. Second, a handful of courts of registration have entertained Rule 60(b) motions directly where the party attacking the judgment contended that the rendering court lacked personal jurisdiction. Id. Clearly, this case does not fit into the second category, so the only question is whether the Court

---

amend a pre-1990 certificate of naturalization (naturalization order) pursuant to [Rule] 60."); Collins v. USCIS, 2013 WL 764752, at *2 (C.D. Cal. Jan. 30, 2013) (holding that court lacked jurisdiction under Rule 60, but only because "the timeliness requirements" of Rule 60–which circuit precedent characterized as jurisdictional–were not met). Other courts relied on a USCIS regulation that authorized judicial proceedings to correct nonclerical errors, 8 C.F.R. § 334.16(b), but this regulation has since been repealed. See In re Weldeabzghi, 2013 WL 717755, at *4 (D. Minn. Feb 27, 2013).

- 6 -

should treat the petition as a collateral attack on the naturalization order warranting exercise of the Court's inherent equitable jurisdiction.

It would be inappropriate for the Court to invoke its inherent equitable jurisdiction in this case. First, while "an independent action brought in the same court as the original lawsuit requires [no] independent basis for jurisdiction," United States v. Beggerly, 524 U.S. 38, 46 (1998), a suit filed in a different court does. Carney v. United States, 462 F.2d 1142, 1144 (Ct. Cl. 1972) (refusing to entertain independent equitable action seeking relief from judgment entered by federal district court in Utah). The only bases alleged here for revisiting the judgment are former § 1451(i) and Rule 60, both of which authorize relief only in the rendering court. Second, invoking this Court's equitable jurisdiction is inappropriate because petitioner has an adequate remedy at law–a Rule 60 motion to the court that issued the naturalization order. See Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808-09 (7th Cir. 1969) (plaintiff could not invoke equitable jurisdiction when he failed to seek relief from judgment in rendering court pursuant to Rule 60(b)(4)). Finally, while federal court in Orlando may be a more convenient forum than federal court in Miami, Petitioner has not shown that litigating in Miami rather than Orlando will cause any significant hardship–and certainly not enough to warrant this Court's revisiting another federal district court's judgment.[6]

Therefore, I conclude that this Court lacks authority to hear the petition. The appropriate remedy for this defect, whether it is characterized as one of jurisdiction or venue, is to transfer the case to the court that can hear it. Section 1406(a) of Title 28

---

[6] Citing Kouanchao v. USCIS, 358 F. Supp. 2d 837 (D. Minn. 2005) and Ampadu, __ F.3d __, 2013 WL 1892713, Petitioner argues that "there does not appear to be a restriction" on filing petitions to amend naturalization certificates in courts other than the naturalization court. (Doc. 9, p. 1). However, Ampadu was transferred from the Southern District of Illinois on precisely the grounds that I recommend transferring this case–that Rule 60(b) motions should be presented to the rendering court and not some other federal court. Ampadu v. USCIS, No. 3:12-cv-00927-MJR-SCW (S.D. Ill. Oct. 19, 2012) (order transferring case).

- 7 -

authorizes transfer of cases where venue is improper or personal jurisdiction is lacking, cf. Goldlawr v. Heiman, 369 U.S. 463, 466 (1962), and Section 1631 permits transfer of cases where subject matter is lacking.  Transfer under either statute is permitted to a court where the case "could have been brought," if the Court determines that the transfer is "in the interest of justice."  The Court has already concluded that the Southern District has jurisdiction to hear the petition.  And, because dismissing the case simply to have Petitioner re-file it in Miami would waste both Petitioner's and the judiciary's resources for no apparent reason, transfer is in the interest of justice.

### III.  Recommendation

Therefore, upon consideration of the foregoing, I respectfully recommend that this action be **TRANSFERRED** to the United States District Court for the Southern District of Florida, Miami Division.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on November15, 2013.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record